IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

**PEGGY LEACH,**

    **Plaintiff,**

v.                                                                                                                                         No. 15-1221

**ELECTRIC RESEARCH AND**
**MANUFACTURING COOPERATIVE, INC.,**
**d/b/a ERMCO,**

    **Defendant.**

---

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff, Peggy Leach, brought this action against Defendant, Electric Research and Manufacturing Cooperative, Inc., d/b/a ERMCO ("ERMCO"), alleging wage discrimination on the basis of gender in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 ("Title VII").[1] (Docket Entry ("D.E.") 1.) Before the Court is ERMCO's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (D.E. 12.) Plaintiff has filed a response, (D.E. 15), to which Defendant filed a reply, (D.E. 16), making the motion ripe for disposition.

---

[1] In her complaint and response to the motion for summary judgment, Plaintiff stated that her claim arose out of 42 U.S.C. 2000e-5. However, that section relates to the Equal Employment Opportunity Commission's power to enforce Title VII. In its discretion, the Court interprets Leach's claim as arising under 42 U.S.C. 2000e-2, which prohibits wage discrimination on the basis of sex. This comports with the substance of Plaintiff's claim, and Defendant cited section 2000e-2 in its motion for summary judgment, so there is no unfairness to ERMCO in interpreting her wage discrimination claim in that way.

I. FACTS

ERMCO produces electrical transformers and transformer components, (D.E. 15-1 at PageID 60), and employs approximately 1,000 employees at its production facilities in Dyersburg, Tennessee (D.E. 12-3 at PageID 48). ERMCO has two plants in Dyersburg: the "Single Phase" plant manufactures transformers for residential use while the "Three Phase" plant produces transformers for commercial use. (D.E. 12-3 at PageID 48.) Plaintiff began working for ERMCO in Dyersburg in 1993, and her job supports both Single Phase and Three Phase manufacturing. (D.E. 15-3 at PageID 86, 88, 101 & 103.) Prior to working at ERMCO, Leach worked at Tokheim Industries ("Tokheim") and Bekaert Steel Wire Corporation ("Bekaert") for a total of twelve years. (*Id.* at PageID 86.) Both these companies "produced goods in similar manufacturing environments and processes as at ERMCO." (*Id.* at PageID 87; D.E. 16-2 at PageID 140.) Leach's résumé reflects that she gained experience in purchasing, inventory control, usage tracking, and forecasting at Tokheim and Bekaert. (D.E. 15-3 at PageID 97-98; *see also id.* at PageID 87.) In addition to her work for these former employers, by 2003, Plaintiff had ten years of purchasing experience at ERMCO. (*Id.* at PageID 86; D.E. 16-2 at PageID 140.) At that time, her annual salary was $37,000. (D.E. 15-1 at PageID 63.)

In support of her claims, Leach offers a male employee, Mike McLaughlin, as a comparator. In 2014, Plaintiff discovered that McLaughlin was earning more money than her. (D.E. 15-3 at PageID 94.) ERMCO hired the comparator in 2003 at an annual salary of $41,000. (D.E. 12-2 at PageID 49; D.E. 15-1 at PageID 62.) According to Leach, McLaughlin was employed to take over her former duties, and she "was assigned to train him on purchasing and forecasting." (D.E. 15-3 at PageID 89.) Plaintiff avers that she and McLaughlin were coworkers

2

in the same purchasing division from 2003 to 2013. (*Id.* at PageID 93.) According to Leach, she and the comparator shared the following job responsibilities: purchasing items for the manufacture of transformers, purchasing commodities, forecasting cost and usage of items purchased to ensure sufficient quantities were stocked, tracking inventory, and maintaining contact with suppliers. (*Id.*) Despite this, McLaughlin "was immediately paid more than [her] for performing exactly the same job that [she] . . . performed." (*Id.* at PageID 90.) Further, she alleges that at the time he was hired, she "was taking on additional 'high dollar commodities . . . .'" (*Id.*)

McLaughlin stated in an affidavit that he was currently the Purchasing Manager at ERMCO and that he supervised Plaintiff. (D.E. 16-1 at PageID 138.) Prior to working for Defendant, he gained experience as a Purchasing Manager and Inventory Control Manager at other companies. (*Id.*) McLaughlin maintained that Leach did not train him when he was hired in 2003 but "merely assisted [him] with orientation regarding ERMCO's business systems." (*Id.*) He further stated that Plaintiff "had no knowledge or understanding . . . of formulas or calculations related to the purchasing and forecasting of commodities pricing and the cost-effective timing of purchasing commodities." (*Id.*) The comparator admitted that Plaintiff "input numbers in spreadsheets and created logs" related to cost forecasting, but he opined that these duties "require[d] little skill." (*Id.*) McLaughlin averred that after he began working at ERMCO, he determined that Plaintiff's "job performance related to commodity purchasing and forecasting was helter skelter and made no sense." (*Id.*) He said that, "respectfully," Leach did "not have the ability" to perform commodity purchasing and forecasting. (*Id.*) Contrary to some

3

of his other statements, the comparator admitted that he and Plaintiff "performed similar jobs from 2003 until 2013," although he insisted they were not done "in the same way." (*Id.*)

In an affidavit, Jerry Ray, ERMCO's Vice-President of Human Resources, asserted that McLaughlin was earning $40,000 at his previous job and that it was necessary to pay him $41,000 "[i]n order to hire such a highly experienced and educated employee." (D.E. 12-3 at PageID 47-49.) Ray said that, unlike Leach who only had an associate's degree, McLaughlin held a bachelor's degree. (*Id.* at PageID 48.) Further, Ray stated that the comparator "had twenty years of prior management and supervisory experience" as well as "industry-related experience[] and purchasing experience" in his two prior jobs. (*Id.*) In contrast, he claimed that she had no such experience. (*Id.*) According to Ray, McLaughlin's job responsibilities included preparing monthly updates and quarterly cost forecasts for carbon steel and oil, "two key commodities utilized by ERMCO . . . ." (*Id.* at PageID 49.) He stated that these cost forecasts were "heavily relied upon by [Defendant's] executive management team" and that Plaintiff did not perform any cost forecasting "or any other tasks that are comparable in importance." (*Id.*) Ray added that the comparator had developed "new and improved forecasting methods" during his time at ERMCO. (*Id.*)

According to Ray, Leach received negative performance evaluations and had "weak communication skills, especially verbally." (D.E. 12-3 at PageID 49.) He said that both employees and outside suppliers had criticized Plaintiff's communication skills. (*Id.*) In contrast, Ray stated that the comparator had "excellent communication skills" and had not received any negative evaluations. (*Id.*) He characterized Leach as "generally weak on technical issues" and said she "occasionally bec[ame] confused with how commodities function[ed] in the

4

manufacturing process." (*Id.* at PageID 49-50.) Ray admitted that "Leach used to purchase commodities" but said that responsibility was taken away from her and given to McLaughlin in 2003 "because she was doing so poorly." (*Id.* at PageID 50.)

Plaintiff disputes many of these facts. She maintains that the comparator's previous employment did not involve transformer manufacturing and thus was not industry related. (D.E. 15-3 at PageID 87.) According to her, McLaughlin did not begin supervising other employees until "as late as 2013 or 2014." (*Id.* at PageID 90.) She contends that performance evaluations support this fact because supervisors sign those evaluations and McLaughlin did not begin signing hers until 2014. (*Id.* at PageID 94.) Plaintiff admits that there is an educational difference between her and the comparator, but she claims that is irrelevant because only an associate's degree was required for the position they held. (D.E. 15-1 at PageID 61.) To support this, she points to ERMCO's job description for the "Buyer/Planner/Expediter" position, which indicates that only a two-year degree was necessary. (D.E. 15-3 at PageID 108.)

Leach further takes issue with Ray's characterizations of her job performance, noting that her annual performance evaluations contradict many of the contentions in his affidavit. (D.E. 15-3 at PageID 88.) Records produced by ERMCO show that in both 2002 and 2003, her performance was assessed in the 5th Quintile/Outstanding. (*Id.* at PageID 101.) Her supervisor commented that she had done "an excellent job" and that her "attitude [was] 'whatever it takes to get the job done.'" (*Id.* at PageID 103.) In 2004, Plaintiff was evaluated in the 4th Quintile/Commendable. (*Id.* at PageID 105.) In that year, her supervisor noted that she had "accepted a significant amount of additional responsibility," was "responsible for a large group of high dollar commodities," and had "learned her new duties while simultaneously training a

5

new employee who was assigned [to] her former duties." (*Id.* at PageID 106.) Leach notes that McLaughlin was the new employee referenced in this evaluation. (*Id.* at PageID 89.) Her 2005 evaluation included comments that "[h]er attitude and work ethic [were] unsurpassed," that her "knowledge base ha[d] increased dramatically since becoming involved in component buying," and that she was "an extremely valuable asset to ERMCO." (*Id.* at PageID 113.) There was also a note that her supervisor would "work with [her] to develop a more effective communication vehicle . . . [and] to eliminate components shortages . . . ." (*Id.*) Between 2007 and 2014, Plaintiff's assessments fluctuated between the 4th Quintile/Commendable and the 3rd Quintile/Competent. (*Id.* at PageID 115-132.) Her 2007 evaluation noted that Leach "was involved in training both Doug Powell and Mike McLaughlin as she transitioned responsibility for some of her current components to them." (*Id.* at PageID 117.) Additionally, Plaintiff's supervisor stated that she had "been instrumental in the introduction of several new component parts and new supplier development" and had "worked tirelessly to support [ERMCO] and [its] customers th[at] year." (*Id.*) She was observed to "maintain[] an even temperament in the face of very demanding circumstances." (*Id.*)

Plaintiff's 2009 evaluation reflected that her "communication [was] sometimes confusing and [led] to frustration," (D.E. 15-3 at PageID 122), but in 2010 her supervisor stated that she had "made significant progress" in that area and "her efforts to improve [we]re apparent" (*Id.* at PageID 124). Her communication continued to improve from this point forward, with subsequent assessments stating that negative feedback from her peers had been reduced and "positive comments [were] noted." (*Id.* at PageID 126; *see also id.* at PageID 128, 129 & 131.) Leach's most recent evaluations, from 2012 to 2014, reflect that she was "very knowledgeable

6

about the business system and her duties," (*id.* at PageID 129); that she was "performing her duties very well" and assisted in training new employees, (*id.*); and that she had "[g]eneral knowledge of all parts" and had been "instrumental in training the other buyers," (*id.* at PageID 131).

Leach avers that no one at ERMCO ever told her that she lacked technical knowledge or struggled to comprehend "the way commodities function in the manufacturing process." (D.E. 15-3 at PageID 93.) She maintains that "[a]s late as 2007," the comparator "was being paid more than [her] to do a job [she] was training him to do." (*Id.*)

Based on these facts, Plaintiff contends that she was discriminated against on the basis of sex. She seeks redress under the EPA and Title VII.

## II. STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides in pertinent part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in the nonmoving party's favor. *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015). "There is a genuine issue of material fact only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (internal quotation marks omitted). "The test is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (citing *Anderson*, 477 U.S. at 251-52) (internal quotation marks omitted). The moving party must initially show

the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). It is then incumbent upon the nonmoving party to "present significant probative evidence to do more than show that there is some metaphysical doubt as to the material facts to defeat the motion." *Id.* (internal quotation marks omitted).

### III. ANALYSIS

A. Equal Pay Act

1. *Prima facie case*

ERMCO contends that Leach has not made out a prima facie case of wage discrimination under the EPA because her job is not substantially similar to the comparator's. Alternatively, Defendant urges that, even if she has made out a prima facie case, it is still entitled to summary judgment because the pay disparity resulted from a factor other than sex. Leach responds that summary judgment is inappropriate because the parties dispute most of the facts that are at the heart of the prima facie inquiry. Further, she argues that Defendant failed to meet its burden of proving an affirmative defense.

The EPA prohibits wage discrimination "between employees on the basis of sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). To establish a prima facie case of wage discrimination under the EPA, a plaintiff must show "that the employer paid different wages to an employee of the opposite sex for substantially equal work." *Timmer v. Michigan Dept. of Commerce*, 104 F.3d 833, 843 (6th Cir. 1997) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). At the prima facie stage, the jobs and not the employees are compared, thus, "'only the skills and qualifications actually needed to perform the jobs are

8

considered.'" *Beck-Wilson v. Principi*, 441 F.3d 353, 363 (6th Cir. 2006) (quoting *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992)).

It is undisputed that McLaughlin's annual salary is $4,000 more than Plaintiff's and has been since he was hired in 2003. However, the parties dispute whether Leach and McLaughlin perform substantially similar jobs. ERMCO maintains that the comparator performs many duties that the Plaintiff does not. These include making cost forecasts, preparing monthly reports, and supervising other employees. Defendant asserts that some of Leach's duties were taken away from her and reassigned to McLaughlin due to her poor performance.

In response, Leach avers that both she and the comparator purchase commodities, forecast cost and usage of items, track inventory, and facilitate contact with suppliers. Further, Plaintiff claims that she trained McLaughlin to perform the same job that she held when he was hired in 2003 and that she provided additional training to the comparator as late as 2007. Leach's performance evaluations support these contentions. Contrary to Defendant's position, company records show that McLaughlin was hired to assume some of Plaintiff's duties after she was given responsibility for "additional 'high dollar commodities.'" (D.E. 15-3 at PageID 90.) Leach says that McLaughlin did not begin supervising other employees until at least 2013. Moreover, the comparator candidly admitted that he and Leach "performed similar jobs from 2003 to 2013." (D.E. 16-1 at PageID 138.)

In sum, the parties' disputes as to whether the employees' jobs entailed substantially equal work render summary judgment inappropriate on this basis. Plaintiff has presented facts from which a jury could conclude that she established a prima facie case of unequal pay for

equal work. Nevertheless, summary judgment may still be warranted if Defendant can establish a gender-neutral reason for the pay differential.

2. *Affirmative defenses*

ERMCO argues that the pay differential was based on "factor[s] other than sex." *See* 41 U.S.C. § 206(d)(1). Specifically, Defendant contends that the disparity is justified by differences in skill level and experience, education, and salary history. Plaintiff responds that these defenses fail because these factors are either unsupported by the record or are irrelevant to the actual duties of the job the comparator was hired to perform.

When a plaintiff establishes a prima facie discrimination case under the EPA, the burden shifts to the defendant to demonstrate that one of four affirmative defenses justifies the differential in pay. *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 826 (6th Cir. 2000). Those affirmative defenses are: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any factor other than sex. 29 U.S.C. § 206(d)(1); *see also Balmer v. HCA, Inc.*, 423 F.3d 606, 612 (6th Cir. 2005) (citation omitted), *overruled on other grounds by Fox v. Vice*, 131 S. Ct. 2205 (2011)). The fourth, "catch-all" provision "does not include literally any other factor, but a factor that, at a minimum, was adopted for a legitimate business reason." *EEOC v. J.C. Penney Co., Inc.*, 843 F.2d 249, 253 (6th Cir. 1988) (citations omitted). Differences in skill level, work experience, salary history, and education can be factors other than sex for purposes of the EPA. *Balmer*, 423 F.3d at 612 (citing cases).

The defendant's burden to prove an affirmative defense is a heavy one and is difficult to carry at the summary judgment stage. *Kovacevich*, 224 F.3d at 826-27. Summary judgment is

appropriate only if the defendant "has satisfied its burden of demonstrating that there is no genuine dispute on any material fact in regard to this issue." *EEOC v. Romeo Cmty. Sch.*, 976 F.2d 985, 989 (6th Cir. 1992). To survive summary judgment, the plaintiff is not required to set forth evidence allowing for an inference that the employer's given explanation for the wage differential is pretextual. *Buntin v. Breathitt Cnty. Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998). Rather, "a defendant bears both the burden of persuasion and production on its affirmative defenses." *Beck-Wilson*, 441 F.3d at 364-65 (citing *Buntin*, 134 F.3d at 800 n.7). "'[U]nless the factor of sex provides *no* part of the basis for the wage differential, the requirements [for that defense] are not met.'" *Id.* (alterations in original) (quoting *Brennan v. Owensboro-Daviess Cnty. Hosp.*, 523 F.2d 1013, 1031 (6th Cir. 1975)). In other words, summary judgment is only appropriate if ERMCO has "established the ["factor other than sex"] defense so clearly that no rational jury could [find] to the contrary." *See Schleicher v. Preferred Solutions, Inc.*, 831 F.3d 746, 753 (6th Cir. 2016) (first alteration in original) (citing *Beck-Wilson*, 441 F.3d at 365).

First, ERMCO claims that it paid McLaughlin a higher salary than Leach because he had more relevant experience and greater skills. However, Defendant's assertion that it paid McLaughlin more because of Leach's inferior skills and poor performance is called into question by the positive evaluations made at the time the comparator was hired. Those evaluations reflect that she was a valued employee whose relevant experience and knowledge qualified her to train other employees, including McLaughlin. That evidence also undermines ERMCO's attempts to characterize her as incompetent. Comments on her assessments reflect that she was reliable, dedicated, and "very knowledgeable about the business system and her duties." (D.E. 15-3 at

11

PageID 129.) While her supervisor noted in 2009 that she needed to work on her communication, she apparently did improve in that area. Further, in the year that she received that feedback, the comparator had been making more money than her for approximately six years.

Additionally, in her affidavit, Plaintiff asserted that she had personal knowledge of the comparator's employment history and that his prior jobs did not involve transformer manufacturing. Although Ray stated that Leach had no industry-related or purchasing experience in 2003, she had been working for ERMCO for ten years at that time, and her performance evaluations reflect that her job entailed purchasing. Plaintiff produced evidence that by 2003, she had twenty-two years of industry-related experience: ten years at ERMCO and twelve years at previous employers Tokheim and Bekaert. Defendant asserts that McLaughlin had twenty years of experience in 2003. These discrepancies call into question Defendant's statement that the comparator's experience "far exceed[s]" Leach's and make summary judgment on this basis inappropriate.

Next, Defendant attempts to justify the pay disparity based on a difference in education. It is undisputed that the comparator holds a bachelor's degree, whereas Plaintiff has an associate's degree. Further, there is no question that education can be a factor other than sex that justifies a pay differential. *See Balmer*, 423 F.3d at 612. However, a bachelor's degree was not a requirement for the position at issue—ERMCO's job description for the "Buyer/Planner/Expediter" job reflects that a two-year degree was sufficient.

In *EEOC v. J.C. Penney Co., Inc.*, the Sixth Circuit held that the "legitimate business reason standard" was "the appropriate benchmark against which to measure the 'factor other than

sex' defense." 843 F.2d at 253.  To pass this test, an employer is required to "show that the factor was adopted for a legitimate business reason and used reasonably in light of the employer's stated purpose." *Id.*; *See also Boaz v. Federal Exp. Corp.*, 107 F. Supp. 3d 861, 881 n.10 (W.D. Tenn. 2015) (explaining that in the Sixth Circuit, the factor other than sex defense must be "related to legitimate business goals" and contrasting that standard with circuits that require only a "gender-neutral business justification" regardless of its reasonableness). An "'illusory,' 'post-event justification'" will not suffice as a factor other than sex. *Odomes v. Nucare, Inc.*, 653 F.2d 246, 252 (6th Cir. 1982) (en banc). ERMCO relies upon the comparator's greater education to justify paying him more than Leach but does not explain why that is an appropriate or reasonable consideration when the job performed did not require a bachelor's degree. Defendant also does not contend that it has a policy of setting employee salaries based on educational attainment. Paying someone more based on his or her education may be a legitimate business purpose in some cases, but that does not mean it will pass muster in all cases. Defendant bears a heavy burden at this stage, and its cursory citation to other cases where education was successfully relied upon as a factor other than sex, without any meaningful discussion of its relevance in these circumstances, falls short of this standard.

"[A] new employee's prior salary" also constitutes a factor other than sex "as long as the employer does not rely solely on prior salary to justify a pay disparity." *Balmer*, 423 F.3d at 612 (noting that sex-based inequality would be perpetuated if prior salary alone justified a difference in pay). ERMCO contends that it considered McLaughlin's previous salary of $40,000, as well as his greater skills, experience, and education when setting his pay at $41,000. However, as discussed above, Defendant has not firmly established that the comparator had more experience

and skill than Leach or that his additional education constituted a legitimate business purpose in this instance. A previous salary without something more does not justify a pay disparity. *Balmer*, 423 F.3d at 612. Again, ERMCO's proffered defense is insufficient to meet the summary judgment standard.

In sum, there are material factual disputes regarding the prima facie case of wage discrimination based on gender, and Defendant has not met its burden of establishing that the pay disparity between Leach and the comparator is justified by a factor other than sex. Accordingly, Defendant's motion for summary judgment on Plaintiff's EPA claim is DENIED.

### B. Title VII

Other than three sentences that very briefly outline the relevant law, Defendant's argument with respect to Plaintiff's Title VII claim is limited to the following two sentences: "[T]he affirmative defense analysis is the same under the EPA or Title VII. It is clear from the facts of this case that Plaintiff has failed to even establish a prima facie case of a violation . . . of Title VII." (D.E. 12-1 at PageID 40.) ERMCO does not recite the elements for establishing a prima facie case under Title VII, offers no analysis in that respect, and does not discuss the relation between the EPA and Title VII, other than to remark that the affirmative defenses are the same. Rather, it merely refers the Court back to the section addressing the EPA claim. Leach pointed out this deficiency in her response to ERMCO's motion, yet in its reply, Defendant made no attempt to elaborate on why it is entitled to summary judgment on the Title VII claim. Regardless of these inadequacies, the Court's conclusions with respect to Plaintiff's EPA claim compel the same result on her Title VII claim.

Title VII prohibits employers from discriminating against individuals with respect to compensation on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). The Sixth Circuit has held that "when an [EPA] claim and a Title VII claim arise out of the same set of underlying facts, both stating a charge of wage discrimination, 'the standards of liability under the two statutes are sufficiently similar' that the disposition with respect to the two claims should be the same." *Clark v. Johnson & Higgins*, 181 F.3d 100, slip op. at *3 (6th Cir. 1999) (unpublished table decision) (quoting *Korte v. Diemer*, 909 F.2d 954, 957 (6th Cir. 1990)). Accordingly, analyzing "a claim of unequal pay for equal work is essentially the same under both the [EPA] and Title VII," and "[a] finding of 'sex discrimination in compensation' under one Act is tantamount to a finding of 'pay discrimination on the basis of sex' under the other." *Korte*, 909 F.2d at 957-59 (citation and internal quotation marks omitted). Likewise, "any violation of the [EPA] is also a violation of Title VII." 29 C.F.R. § 1620.27(a). Thus, "'where the plaintiff defeats the defendant's motion for [summary judgment] with respect to her EPA claim by raising a genuine issue as to the defendant's reason for the differential pay, she also defeats [its] motion for [summary judgment] brought against her parallel Title VII claim.'" *Beck-Wilson*, 441 F.3d at 369 (alterations in original) (quoting *Buntin*, 134 F.3d at 801). Accordingly, Defendant's motion for summary judgment on Plaintiff's Title VII claim is also DENIED.

IV. CONCLUSION

In light of the foregoing and the record as a whole, Defendant's motion for summary judgment is DENIED.

**IT IS SO ORDERED** this 22nd day of November 2016.

s/ J. DANIEL BREEN<br>
CHIEF UNITED STATES DISTRICT JUDGE